GERTRUDE BUTLER (nee RICH), a minor, by LILLIAN SPILLMAN, next friend, Appellant, v. JENNIE T. FREYMAN, Respondent.*

In the Kansas City Court of Appeals, April 7, 1924.

1. **LIBEL AND SLANDER:** The Term "Malicious" Defined. The term "malicious" used in reference to an alleged charge of slander does not mean that defendant must have actual ill-will against plaintiff, but means the doing of a wrongful act intentionally without just cause or excuse.

2. ———: Slander Means Words Falsely Spoken and Injurious to Reputation of Another. Slander means words falsely spoken which are injurious to the reputation of another.

3. ———: Privileged Communication: Communication Made in Good Faith by One in the Prosecution of Inquiry Regarding a Crime Believed to Have Been Committed Against Him are Privileged. Communications otherwise slanderous are privileged if made in good faith by one in the prosecution of an inquiry regarding a crime which he believes to have been committed against him.

4. ———: ———: Actual Malice: Statement Made in Reference to Alleged Theft of Hat from Millinery Store Held under Circumstances to be Qualifiedly Privileged. Where owner of a millinery store made a statement to a customer whose companion while trying on hats suddenly remembering she had an appointment, hurriedly left the store wearing a hat taken therefrom, "There went a lady out of my store with one of my hats on; it was that lady with you, you had it made up to steal my hat; you are stealing my hat," *held* qualifiedly privileged, because made in good faith in prosecuting an inquiry regarding a crime believed to have been committed against her, thus placing on plaintiff the burden to prove actual malice.

*Headnotes 1. Libel and Slander, 36 C. J., Section 6; 2. Libel and Slander, 36 C. J., Section 4; 3. Libel and Slander, 36 C. J., Section 249; Libel and Slander, 36 C. J., Section 249, 37 C. J., Section 616.

Appeal from Circuit Court of Buchanan County.—*Hon. L. A. Vories,* Judge.

AFFIRMED.

*Sherman, Stigall & Kranitz* for appellant.

*Randolph & Randolph* for respondent.

ARNOLD, J.—This is an action in damages for slander. At the time of the institution of the suit plaintiff was a minor, under twenty-one years of age, and the suit was brought in the name of plaintiff by her sister, Lillian Spillman, her legally appointed guardian and next friend.

In July, 1919, plaintiff, then seventeen or eighteen years of age, went with her elder married sister, said Lillian Spillman, into defendant's millinery store, located on the south side of Felix street between Sixth and Seventh streets in the City of St. Joseph, Mo., for the purpose of buying a hat for the latter. The testimony shows the time to have been in the afternoon between 12:30 and 2 o'clock. While defendant was engaged in trying hats on plaintiff's sister, plaintiff took off her own hat and was trying on hats lying on the counter, though with no intention of buying, and was examining them in a mirror a few feet from where her sister was being waited upon by defendant. While plaintiff had one of defendant's hats on her head, she suddenly remembered that she had an appointment to meet a friend in South St. Joseph and fearing she was late, she hurriedly left the store of defendant with a new hat on her head, leaving her own hat on the counter.

The testimony tends to show that plaintiff's hat and the new one of defendant which plaintiff had on her head were similar in color, design and structure. After plaintiff had left the store, defendant rushed up to Mrs. Spillman and exclaimed in the presence of two other

women and a girl, "There went a lady out of my store with one of my hats on. It was that lady with you. You had it made up to steal my hat; you are stealing my hat." Plaintiff's witness, Mrs. Spillman, quotes the alleged defamatory words as follows: "It was the lady with you; you had it made up; you are stealing my hat."

The petition alleges defamatory words as follows: "There went a lady out of my store with one of my hats on—it was that lady (meaning plaintiff) that was here with you. You had it made up to steal my hat," The alleged defamatory words were spoken to plaintiff's sister just after plaintiff had left defendant's store. Defendant then went out of the store into the street and called a traffic policeman, saying to him that a lady inside her store "had stole." Plaintiff's sister had remained inside the store while defendant went to call the policeman. Defendant then returned to the store with the policeman. In the meantime, due to the excitement, a crowd of considerable proportions had gathered in front of the store. Plaintiff's sister then was required to give her name and address and the name and address of plaintiff, for the use of the police officer and a city detective who, noticing the commotion, had followed the officer into the store.

Plaintiff's own testimony is to the effect that when she reached the place of appointment in South St. Joseph, she looked into a mirror in the window of a store and for the first time since leaving defendant's store, discovered she had on the wrong hat. Thereupon she took off the hat, talked a few minutes with her friend, refused to fill her engagement for the afternoon and then, for lack of car fare, walked a distance of a mile and a half to her mother's home. She spent a short time there and then went to the home of her sister (Mrs. Spillman), an additional distance of about eight blocks, and there learned from her sister what had taken place in the millinery store after her departure therefrom. Plaintiff then returned to the millinery store, carrying the hat

in a bag, but she did not reach the store until six o'clock, or soon thereafter, at which time the store had been closed for the day. The next morning between 9:30 and 10 o'clock, she took the hat back to the store, delivered it to defendant and received her own hat.

The petition prays actual damages in the sum of $5000 and punitive damages in a like amount. The answer, in addition to a general denial, alleges that plaintiff came into defendant's store and without the knowledge or consent of defendant, left the store taking one of defendant's hats which was not paid for by plaintiff, and not offered to be paid for by plaintiff or by anyone for her. The answer further alleges that the plaintiff left defendant's store, taking with her a hat from said store which belonged to defendant and that the said Lillie Spillman remained in said store, and defendant says that upon discovering that one of her hats had been taken away, she immediately made inquiry and efforts to recover said hat and to learn the identity of the party who had worn said hat away as aforesaid, and defendant says that on the following day defendant recovered said hat from plaintiff.

"Defendant further says that in making inquiry for said hat, she mentioned the fact that 'a lady went out of my store with one of my hats,' all of which was true in fact. That whatever was said by defendant was spoken without malice toward anyone, and only in an effort to recover the hat which the plaintiff had carried with her from defendant's store."

The cause was tried to the court with the aid of a jury. At the close of plaintiff's case, and again at the close of all the evidence, defendant asked and the court refused a peremptory instruction in the nature of a demurrer. The verdict was for plaintiff in the sum of $500 actual damages, and judgment therefor was entered. On motion for new trial the court set aside the verdict and granted defendant a new trial, "for the sole reason," as stated by the court, "that the court committed error

in giving plaintiff's instruction No. 2, and the refusal of defendant's instruction No. 3, at the trial of said cause.''

Plaintiff appeals from the order granting defendant a new trial.

Instruction No. 2 for plaintiff reads: ''You are instructed that by the term 'malicious' is not meant that defendant must have had actual ill will against plaintiff; but means the doing of a wrongful act intentionally without just cause or excuse. And you are instructed that if you find and believe from the evidence that the publication in question, provided you so find, was made intentionally and without just cause or excuse, then it is immaterial whether or not defendant entertained any actual malice against plaintiff.''

The occasion for defining the word ''malicious'' arose from the use of the following language in instruction No. 1, given for plaintiff, viz., ''. . . if you find and believe from the evidence that . . . the defendant in the presence and hearing of persons other than plaintiff and defendant falsely and maliciously spoke of and concerning plaintiff the following words:'' While, as stated above, the basis for granting a new trial was that the court committed error in giving instruction No. 2 for plaintiff and failing to give instruction No. 3 for defendant, neither the court nor counsel points out specifically wherein the error lies.

Bouvier's Dictionary of Law defines malice in criminal law as ''the doing of a wrongful act intentionally without just cause or excuse.'' And the same authority defines slander as ''the absence of legal excuse.'' [Branstetter v. Dorrough, 81 Ind. 527.] Slander has been variously defined, but tersely stated it may be said to be ''words falsely spoken which are injurious to the reputation of another.'' [Bouvier.]

In the light of these definitions, it is evident the first sentence used in instruction No. 2 defines the word malicious, and the·charge of error, therefore, must have

Butler v. Freyman.

been directed against the latter part of the instruction, to-wit, "that if you find and believe from the evidence that the publication in question . . . was made intentionally and without just cause or excuse, then it is immaterial whether or not defendant entertained any actual malice against plaintiff."

It is insisted by plaintiff that said instruction was proper unless the occasion was one of privilege, and then urges that the occasion was not privileged, citing Garey v. Jackson, 197 Mo. App. 217, 193 S. W. 920. The facts in that case are materially different from those appearing in the case at bar. There the statements complained of were spoken by the president of a cooperative store at an annual meeting thereof, said members being students of the University of Missouri. Each of the students present had a pecuniary as well as a moral interest in the welfare of said cooperative store. For a year or more there had been a rivalry between the Missouri Store, of which plaintiff Garey was the manager, and the said cooperative store, and plaintiff had stated openly that if possible, he would put the cooperative store out of business. At the time the alleged slander occurred, the very existence of the cooperative store was threatened and the situation required that every legitimate step be taken to strengthen the loyalty and support of the students. It was in the course of explaining the condition of affairs that the alleged defamatory words were spoken. The court held, under the facts, that the words spoken were qualifiedly privileged and judgment for plaintiff was reversed on the general ground that at the time of this particular meeting the very existence of the cooperative store was threatened and that every legitimate step was required to be taken to strengthen the loyalty and assistance of the students.

In Hancock v. Blackwell, 139 Mo. 440, 451, 41 S. W. 205, BURGESS, J., speaking for the court, quoted with approval the following excerpt from Townshend on Slander & Libel (4 Ed.), 296, note 3:

216 M. A.—41

"Privileged communications are of four kinds, to-wit, where the publisher of the alleged slander acted in good faith in the discharge of a public or private duty, legal or moral, or in the prosecution of his own rights or interests; anything said or written by a master concerning the character of a servant who has been in his employment; words used in the course of a legal or judicial proceeding; and publications duly made in the ordinary mode of parliamentary proceedings."

Of these classes of privileged communications, the only one deemed to have any application here is "in the prosecution of his own rights or interests." The charge herein is based upon the words alleged to have been spoken to plaintiff's sister in the store at the time defendant discovered plaintiff leaving the store with a hat belonging to defendant. Obviously excited and thinking of recovering her property, may it not reasonably be concluded that the words were uttered by defendant in the prosecution of her own rights or interests? Defendant knew that the two women had entered her store together and the words reasonably might have been understood as an implied appeal to Mrs. Spillman to aid defendant in the return of her property. The circumstances were such as to lead defendant honestly to believe that her property was being stolen. The testimony shows she was not acquainted with either plaintiff or her sister. The occasion of the publication of the alleged slanderous words, the situation of the person by whom the words were uttered and the circumstances detailed in evidence repel the presumption or inference of malice which the law imputes to a false and injurious accusation gratuitously made.

The general rule is that communications which otherwise would be slanderous are privileged if made in good faith by one in the prosecution of an inquiry regarding a crime which he believes to have been committed against him. [Taylor v. Chambers (Ga.), 58 S. E. 369.] Under this rule we hold the communication in which the

alleged slanderous words were spoken was qualifiedly privileged, and thus holding, it follows that the burden was upon plaintiff to prove actual malice, and the giving of instruction No. 2 was therefore erroneous. This being true, the court was in error also in refusing defendant's instruction No. 3, as follows:

"The jury must find for the defendant if they find and believe from the evidence that the plaintiff did take and carry away from the store of the defendant, a hat belonging to defendant under such circumstances as to induce in the mind of the defendant an honest belief that plaintiff had stolen the hat, and that the defendant in making whatever statements she made was in good faith acting on an honest belief that the plaintiff had stolen a hat from her."

This instruction properly declares the law and should have been given. The judgment of the trial court in granting a new trial is affirmed. All concur.